TEETZ v. INTERNATIONAL & G. N. RY. CO.

(Court of Civil Appeals of Texas. Austin. Dec. 10, 1912. Rehearing Denied Jan. 21, 1914.)

RAILROADS (§ 327*)—ACCIDENT AT CROSSING—FAILURE TO LOOK AND LISTEN—CONTRIBUTORY NEGLIGENCE.

In an action against a railroad for injuries at a crossing, plaintiff, who drove upon the track without looking to see the time, although he knew that a train was then about due, and who did not look up the track, which was clear for a mile, when he could have seen the headlight of an approaching train, and who had his head down to avoid the wind, and who had been drinking before going on the tracks, was, as a matter of law, guilty of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043–1056; Dec. Dig. § 327.*]

Appeal from District Court, Falls County; Richard I. Munroe, Judge.

Action by John Teetz against the International and Great Northern Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Nat Llewellyn, of Marlin, for appellant. Neff & Taylor, of Waco, for appellee.

KEY, C. J. This is a personal injury suit, in which the trial court instructed a verdict for the defendant, and the plaintiff has appealed and assigned that instruction as error. On the night of October 12, 1912, the plaintiff was traveling in a vehicle from the town of Marlin to his home. The road which he was traveling crossed the defendant's railroad track, and the plaintiff knew that a train was due to pass that crossing at about the time he reached it, which was a few minutes before 12 o'clock. While the plaintiff was crossing the railroad track, the train passed, struck his team and vehicle, and inflicted the injuries of which he complained.

We copy the following excerpts from the plaintiff's testimony, as correctly set forth in appellee's brief: "It was something close to 12 o'clock when I was struck. * * * It was the first norther and was a dark night. I had my summer clothes on and no overcoat, and I pulled my hat down to keep the norther off of me, and so I got on the track and the mules reared up from the light, and I looked up and saw the train * * * about that time the train hit me. * * * It is possible there might have been a whistle, but I never heard the whistle. * * * The mules scared at the light, the blind of the light was what scared the mules. * * * I got to Marlin about 3 o'clock. * * * I left home about 11 o'clock. I can see the trains from my house when they pass. I knew the train crossed this crossing. I knew the crossing. I knew there was a night train, but I did not look at my watch and did not know what time it was. I did not know it was that late. I had a watch with me. I knew there was a midnight passenger train that passed, I knew that, but sometimes a man does not look every time. I knew there was a train at 12:30 or 11:30. * * * I had traveled on that train going from Waco to Marlin at night. * * * I knew the train passed there about the time I got there that night. I knew that the crossing was there, and I knew that the railroad track was at the crossing. * * * I was in some saloons here that day. I was in the saloons with John Reeder and my brother. No one else drank with me that day that I know of. I might have drank some more that day, but I paid no attention to it much. I cannot remember whether I drank with any one else that afternoon. * * * It is about 15 miles from Marlin to the crossing where I

was hurt. * * * It might have been 18 miles. * * * I was drinking in Marlin. I drank a glass of beer and might have drank more * * * one or two or three or four. * * * I might have drank one or two. I never counted. I drank beer; I do not drink whisky. * * * I went by Otto because I thought I might see some friends out there. * * * There is a saloon in Otto and was then. There is no saloon around the other way that I might have gone to. * * * I cannot tell, how much I drank in Otto. * * * That was my flask of whisky that was found at the crossing. * * * That was a cold night and I had summer clothes. Of course whisky is pretty good under circumstances like that. * * * I was driving a hack without a top. The road is straight. * * * It looks like you are going down the track. That light blinded the mules. There was a light. It was an electric light. I saw it too late. I would have gotten by if the mules had not scared. I did not see it until I got on the track. The railroad track is straight for more than a mile, downward and upward. * * * I did not see the headlight until I got on the track, because I was just going right on. * * * If I had looked up the track I could have seen that bright headlight. I could have seen it for more than a mile. I saw it when I got close and tried to cross the track. The train makes a good deal of noise running. The wind was blowing from the train to me. * * * The wind carries sound. I do not recall hearing the whistle. I knew I was at the crossing before I got to it. I did not look. * * * Of course, I expected something to come on. I knew the track was there. * * * Just about the time I got there, I thought the train was coming on, and just about the time I got to the track, the mules stopped and reared up. I thought about that before I got to the track. I listened, but, of course, I never heard anything, and when I looked up I saw the train. * * * I thought about the train before I got on the track and saw it that night. I had my head down. I had my head turned up towards the north, facing the wind. I had my head sorter beating the wind off and from my breast. I could have seen it if I had looked up. It was a bright headlight. It was right on me when I first saw it just about the time when the mules got on the track. I could have seen it before if I had looked up sooner. * * * Counsel might think that I had drank so much whisky, that my team was just going along having their way about it, but I did not. * * * There was nothing that I know of to obstruct the view of the coming train."

No testimony was submitted by the defendant, and the trial court held that the undisputed testimony on behalf of the plaintiff showed that he was guilty of contributory negligence. Counsel for appellant controvert that holding, and contend that the question of negligence on the part of the defendant, and contributory negligence on the part of the plaintiff should have been submitted to the jury. We agree with the trial court, and overrule appellant's contention. Railway v. Bracken, 59 Tex. 73; Ry. v. Kauffmann, 40 Tex. Civ. App. 72, 101 S. W. 817; Ry. Co. v. Johnson, 125 S. W. 933.

No error has been shown and the judgment is affirmed.

Affirmed.